THE PEOPLE OF THE STATE OF NEW YORK *v.* WILLIAM L. LEARNED, JUSTICE OF THE SUPREME COURT.

*Commission to investigate canals — power of legislature to create by resolution — chap. 91 of 1875 — power of commission to compel production of books and papers.*

In March, 1875, a commission was created, by concurrent resolution of senate and assembly, to investigate the affairs of the canals of this State. Upon the hearing of an application for the discharge of a person committed by the commission for contempt in refusing to produce before it certain books and papers, it was insisted that such a commission could only be created by bill enacted by both branches of the legislature and signed by the governor. *Held,* that there

was no clause in the Constitution expressly prohibiting the creation of a commission by concurrent resolution; and that, when not expressly prohibited, the legislative power was unrestricted and unlimited.

The act (chapter 91, Laws of 1875) provided, that in case of the refusal of a witness to obey the subpœna, he should be brought before the commission by attachment, and that " the like proceedings shall thereupon be had as if such commission was a court of record and such witness had been duly subpœnaed to attend before it." *Held* (1), that the act was not in conflict with the constitutional provision declaring that no person shall be deprived of life, liberty or property without due process of law; (2), that the act was not in conflict with section 17 of article 3 of amended Constitution, providing that no act shall be passed which shall enact that any existing law shall be deemed a part of or applicable to the said act, except by inserting it therein; (3), that the said commission was empowered to issue subpœnas to enforce the attendance of witnesses and to compel the production of books and papers, and to adjudge any person willfully refusing to produce such books or papers guilty of contempt, and to commit him therefor.

This clause of the Constitution, last mentioned, should receive a strict construction. (Per JAMES, J.)

THIS was a writ of *certiorari* issued under the provisions of the Revised Statutes (2 R. S., 573, § 69), to review the decision of the defendant, Mr. Justice LEARNED, discharging Henry D. Denison, brought before him on *habeas corpus*.

By the return to that writ of *habeas corpus* made by the sheriff of the county of Albany, it appeared that Denison was held in by custody under and by virtue of the following commitment, issued the Canal Investigating Commission, under chapter 91, Laws of 1875 :·

*The People of the State of New York to the Sheriff of the County of Albany, greeting :*

Whereas, in a certain investigation of the affairs of the canals of the State of New York pending before a commission appointed to investigate the affairs of the canals of the State, duly appointed under and by virtue of the authority of the legislature of the State of New York, one Henry D. Denison had two certain contracts with the people of the State of New York for the performance of work upon the canals of the State, one of said contracts being for the performance of work, between Port Schuyler and the lower Mohawk aqueduct, and the other of said contracts being for the performance of work at Utica, from the eastern limits of the city of Utica to the junction of the Chenango canal. And, whereas, the

said commission was investigating the subject of the said contracts of the said Henry D. Denison. And, whereas, the said Henry D. Denison had been duly subpœnaed to attend before such commission, to give such information touching the subject of the inquiry of said commission as might be in his possession, and had been further ordered, by said subpœna, to bring with him before said commission all his books and papers relative to his contracts with the State to be performed between Port Schuyler and the lower Mohawk aqueduct, and at Utica, from the eastern limits of the city of Utica to the junction of the Chenango canal, and had been paid his fees upon said subpœna.

And, whereas, the said Henry D. Denison did appear before said commission, said commission being then duly organized and holding a regular meeting to investigate the affairs of the canals of the State, on the 14th day of July, 1875, and did then and there admit and declare that he had in his possession books and papers relative to his said contracts with the State for work to be performed between Port Schuyler and the lower Mohawk aqueduct, and at Utica, from the eastern limits of the city to the junction of the Chenango canal, and did then and there, in the immediate presence of said commission, willfully refuse to produce said books before said commission, and to obey such subpœna.

And, whereas, the said Henry D. Denison has thus been guilty of willful disobedience of process lawfully issued by said commission to investigate the affairs of the canals of the State, and of contemptuous behavior in the immediate view and presence of said commission during its sitting, tending directly to interrupt its proceedings and impair the respect due to its authority.

And, whereas, the aforesaid misconduct of the said Henry D. Denison is calculated to impair or defeat the rights of the State in said investigation.

And, whereas, the said Henry D. Denison, being now here before this commission, has, for the causes aforesaid, been adjudged guilty of contempt of the said commission, now, therefore, you are hereby ordered to take the body of the said Henry D. Denison and commit him to the common jail of the county of Albany, and there keep him imprisoned until he shall have consented to produce and shall produce to and before this commission all his books and papers

relative to contracts with the State for work to be performed between Port Schuyler and the lower Mohawk aqueduct, and at Utica, from the eastern limits of the city to the junction of the Chenango canal, not exceeding thirty days.

Witness the hands of this commission, affixed hereto at the present sitting of this commission appointed to investigate the affairs of the canals of the State, at the capital, in the city of Albany, the 14th day of July, 1875. .

(Signed)        JOHN BIGELOW,
                 D. MAGONE,
                 A. E. ORR,
                 JOHN D. VAN BUREN, JR.,
                              *Commissioners.*

The judge held that, conceding that the canal commission was given power to compel the attendance of witnesses and might compel such attendance, it could not compel them to answer when attending or to produce such books and papers.

*Samuel Hand,* for the appellant. The act of 1875 gives the Canal Investigating Commission explicit power to subpœna persons not only to appear before it, but to testify and to produce books and papers, and on their failure to obey this subpœna in any respect, whether by failing to attend or to testify when attending, or to produce books and papers, the commission are authorized to proceed to compel them in the same manner as a court of record, and the judge erred in holding otherwise. (Laws of 1875, pp. 80, 81.) The claim that the law of 1875 gave to the commission power to compel the "witness" to attend, but if the witness on attendance refused to open his mouth or to produce books called for, they must acquiesce in his silence and contumacy, and are powerless to compel him to obey the subpœna, is too absurd a construction to be adopted unless it is the plain and unmistakable meaning of the language. The theory that because the commission is to issue an attachment to bring the witness before them, that therefore when he is before them, they can do nothing, is directly at war with the act. The act expressly says, that in case of failure to "obey the subpœna," the commission shall have power, in the first place, to issue an attachment to bring him before them, and then to proceed as a

court of record could, in case of failure to obey a subpœna.  It is
making a part of the statute the whole, to say that if he is before
them, they can do nothing, because if not before them they would
have to attach and get him before them before they could do any
thing.  When the disobedience consists in non-attendance as well
as failure to produce books, they must attach him as a preliminary
to dealing with him.  When the disobedience is in refusing to pro-
duce books, that attachment is not a necessary preliminary, he being
already before them, and they are to deal with him, as a court of
record would, without it.  The plain meaning of a statute is not
to be defeated by clinging to the closest literal interpretation of
the letter.  A thing within the intention is within the statute, even
though not within the letter.  (*Chase* v. *N. Y. C. R. R.*, 26 N. Y.,
523 ; Dwarr. on Stat., 562 ; *Weed* v. *Tucker*, 19 N. Y., 422 ; *Turn-
pike Co.* v. *McKean*, 6 Hill, 616 ; *People* v. *N. Y. C. R. R.*, 3
Kern., 78 ; *Dresser* v. *Brooks*, 3 Barb., 429 ; *James* v. *Patten*, 2
Seld., 9.)  The suggestion that the title of the act controls, is erro-
neous.  It is settled that it does not.  (*U. S.* v. *Fisher*, 2 Cranch,
386 ; *U. S.* v. *Palmer*, 3 Wheat., 610 ; *People* v. *McCann*, 16
N. Y., 58 ; *Jackson* v. *Gilchrist*, 15 Johns., 116 ; *Constantine* v. *Van
Winkle*, 6 Hill, 177.)  It is no valid objection that the commission
was authorized by a joint resolution of the legislature, and not by
act. ˙ There is no constitutional prohibition against this method of
appointing officers.  (*People* v. *N. Y. C. R. R.*, 34 Barb., 123 ;
S. C., 24 N. Y., 485 ; *People* v. *Fisher*, 24 Wend., 215 ; *Grant* v.
*Courter*, 24 Barb., 232.)  Except as limited by the express restric-
tions of the State Constitution, the State legislature is unrestricted
in power, and as omnipotent, in a legal sense, as the British parlia-
ment.  The legislature possesses the whole power of the people,
subject to the Constitution.  The rule is that the legislative power
is only restrained by the Constitution, not conferred by it.  In this
respect State legislatures contrast with congress.  (ANDREWS, J.,
*People* v. *Dayton*, 55 N. Y., 380 ; *Leggett* v. *Hunter*, 19 id., 445,
and cases cited ; *Bank of Chenango* v. *Brown*, 26 id., 467 ; *Cath-
cart* v. *Fire Dept.*, id., 529 ; *People* v. *Morrell*; 21 Wend., 563 ;
*Butler* v. *Palmer*, 1 Hill, 324 ; *People* v. *Rodgers*, 13 Cal., 159 ;
*Bushnell* v. *Beloit*, 10 Wis., 195 ; *Page* v. *Allen*, 58 Penn., 338 ;
*Comm.* v. *Drury*, 15 Gratt. [Va.], 1.)  The power, therefore,

immemorially exercised, both by the State and national·legislatures and by parliament, of expressing their will by resolution, especially in reference to the designation of its officers, is clearly *intra vires*, unless the petitioner can affirmatively show some express constitutional provision forbidding it, and on this point the burden is on him. (*People* v. *Dayton*, 55 N. Y., 368.) This method of naming officers and commissioners has been constantly used by the legislature without question by any department of the government, not only before, but since the Constitution of 1846, and this alone is entitled to controlling weight on the question of its constitutionality. (*People* v. *Dayton*, 55 N. Y., 367, 378; Story on Const., § 408; Cooley on Const. Limit., 67, and cases there cited. As instances of legislative usage, reference is made to the following joint resolutions: Laws of 1848, p. 579, resolution appointing Code commission; Laws of 1849, p. 729, authorizing secretary of State to appoint three persons to investigate blind institution; Laws of 1849, p. 737, authorizing government to appoint commissioners to mature plans for agricultural college; Laws of 1852, p. 737, authorizing legislative committee to investigate canal affairs, and send for persons and papers; Laws of 1853, p. 1260, authorizing governor to appoint two commissioners to codify military laws; Laws of 1857, p. 795, appointing committee to examine tunnel project; Laws of 1860, p. 1079, appointing commission to examine affairs of prisons; Laws of 1861, appointing peace commission; Laws of 1862, p. 904; Laws of 1864, 1865, appointing stenographer to legislature; Laws of 1865, appointing commissioners to settle with Banks Bros.; Laws of 1866, p. 2131, authorizing prison association to appoint a commission to examine, on oath, management of prisons; Laws of 1867, p. 2495, appointing joint committee to investigate, also, inebriate asylum; Laws of 1866, p. 2501, authorizing investigation of savings banks; Laws of 1870, p. 2149, authorizing governor to appoint three persons to revise assessment laws; Laws of 1870, p. 2180, authorizing governor to appoint commission to investigate convict labor; Laws of 1871, authorizing governor to appoint commission to extinguish Indian title; Laws of 1871, p. 2183, authorizing governor to appoint agent to collect claims against United States; Laws of 1871, p. 2189, governor to appoint part of centennial commission; Laws of 1873, p. 1389; Laws of 1874, p. 940, both authorizing

governor to appoint commissions. In addition to these may be mentioned joint resolutions, as the expression of the will of the legislature as to constitutional amendments, filling vacancies in office of comptroller, the election of United States senators, of superintendent of public instruction, instructions to members of congress, and various other matters.) The argument that the clause in the bill of rights (Const., art. 1, § 6), declaring that no person should be held to answer for a capital or otherwise infamous crime unless on presentment or indictment, and that no person should be deprived of life, liberty or property, without due process of law, goes not to the power of the legislature to give this commission power to enforce obedience to subpœna, or to treat disobedience as a contempt, but to the whole power to punish contempt summarily by any body; or, in other words, denies that summary imprisonment for refusal to testify is " due process of law." But this question has long since been settled otherwise. (*Oswald's Case*, 1 Dal., 319 ; *Hollingsworth* v. *Duane*, J. B. Wall., 77 ; *State* v. *Doty*, 32 N. J. Law, 403 ; *Re Cooper*, 32 Verm., 253 ; *Ex parte Grace*, 12 Iowa, 208 ; *Bradley* v. *Veazie*, 47 Me., 85.) The concession that legislatures have power to compel witnesses to testify, and to punish them for refusal, is sufficient for our purpose. (1 R. S., 154, § 13.) For the legislature may, wherever it can or may delegate a duty, delegate the powers accompanying it. (*Bloodgood* v. *Mo. and Hudson R. R.*, 18 Wend., 9 ; *Buff. R. R. Co.* v. *Brainard*, 5 Seld., 100.) A more decisive answer to the petitioner's objection is, that the legislature may be considered to have made the commission a court of record, as to the investigation, the subpœnaing of witnesses, and the compelling them to testify. (Laws of 1875, chap. 91 ; *Case of Twelve Commitments*, 19 Abb., 394 ; *Briggs* v. *Mackellar*, 2 id., 61 ; *Groesevelt* v. *Bunvell*, 1 Comyn, 76.) That the legislature has the power thus to make a court of record, or give an officer power to act as a court, will not be disputed. (*Brandon* v. *Avery*, 22 N. Y., 469 ; *Hayner* v. *James*, 17 id., 316 ; *Doubleday* v. *Heath*, 16 id., 80 ; *Int. Bank* v. *Bradley*, 19 id., 245.) There is nothing in this claim of the constitutional right of a witness to withhold private papers from the commission, for these are not shown to be private papers ; but there is no such constitutional right. (See the whole subject thoroughly discussed

in *Burnham* v. *Morrissey*, 14 Gray [Mass.], 226, 240.) As to the witness being exempt from giving evidence or furnishing books or papers tending to criminate himself, it is enough to say that he made no such pretense, and raised no such objection. It does not at all appear that the books would criminate him, and that must be shown. (HOAR, J., *Burnham* v. *Morrissey*, 14 Gray, *supra ; Amey* v. *Long*, 9 East, 473 ; *Byass* v. *Sullivan*, 21 How., 50, 53 ; *Bull* v. *Loveland*, 10 Pick., 9 ; 2 Phil. Ev. [Edw. ed.], 814, 816 ; *Doe* v. *Egremont*, 2 M. & R., 386.) Subpœna *duces tecum* is the proper process, and is so expressly made by the statute of 1875 (chap. 91), to obtain the production of books and papers. (*Davenbagle* v. *McKinnie*, 5 Cow., 27 ; *Aikin* v. *Martin*, 11 Paige, 499 ; *Cook* v. *Nash*, 9 Bing., 723 ; *Terry* v. *Rubel*, 12 L. O., 147 ; *Mitchell's Case*, 12 Abb., 249 ; *Bonestell* v. *Lynde*, 8 How., 226 ; *Lane* v. *Cole*, 12 Barb., 680.) And refusal to produce them is as much a contempt, and to be punished as such, as a refusal to answer or attend. (*Mitchell's Case*, 12 Abb., 249 ; *Regina* v. *Llanfaethly*, 2 El. & Bl., 940 ; *Burnham* v. *Morrissey*, 14 Gray, *supra*.) The requirement of the subpœna was sufficiently definite. All that is necessary is that the witness should know what is wanted. (*Low* v. *Graydon*, 14 Abb., 443.) Party may seal up parts of books not relating to the contracts. (*Titus* v. *Cortelyou*, 1 Barb., 449 ; *Burnham* v. *Morrissey*, *supra*.) The relevancy or materiality of the evidence cannot be inquired of on *habeas corpus*. (*People* v. *Sheriff*, 29 Barb., 622 ; 2 R. S., 568, § 42.) It was not an indispensable preliminary to the proceeding, that the commission should issue an attachment to bring the petitioner before them. (Black. Com. [4th book], 28 ; *Respublica* v. *Oswald*, 1 Dal., 328.)

*Wm. C. Ruger* and *Frank Hiscock*, for the relator. The legislature have no constitutional power to pass any law under which "a citizen may be deprived of life, liberty or property without due process of law." (Const., art. 1, § 6 ; *Westervelt* v. *Gregg*, 12 N. Y., 209 ; *Taylor* v. *Porter*, 4 Hill, 145 ; *Wynehamer* v. *The People*, 13 N. Y., 393 ; *Rockwell* v. *Nearing*, 35 id., 308 ; *Yates* v. *Lansing*, 9 Johns., 416.) The right for punishing for contempt by summary conviction is inherent in all courts of justice and legislative assemblies, and is essential for their protection and existence. It is a

branch of the common law adopted and sanctioned by our State Constitution. (1 Kent's Com., 236–300; *Mitchell's Case*, 12 Abb., 249.) The respondent must, in order to escape the effect of this constitutional guarantee, show that the proceeding of this commission was according to some mode in existence at the time of the adoption of the Constitution. It cannot be claimed that the commission are in any sense a legislative body, or that they enjoy any of the powers of such bodies by delegation. It follows, then, that unless the claimed and exercised powers pertain to them as a court of justice, they have no legal existence. If the powers claimed to belong to this commission are the proper attributes of a court, the legislature have exceeded their powers in its creation. The legislature have no power to create any court except one of local inferior jurisdiction. (Const., art. 6, § 19.) The commission should have been created by bill or law, and not by joint resolution. (New Const., § 14, art. 3; Cushing's Law and Practice, §§ 707, 798, 799, 2403.) The Constitution prohibits legislation by resolution, and requires the assent of the executive to all laws not passed over his veto by constitutional forms. (Art. 4, § 9.) It is claimed that the act, chapter 91 of the Laws of 1875, has given vitality to an otherwise void act of the legislature by its recognition thereof. It is submitted that the constitutional provision, article 3, section 17, would prohibit the legislature from giving effect to this void resolution, even if they had expressed their intention explicitly in the subsequent act; much less could it be done by its mere recognition. (3 City Hall Rec., 113.) A discovery of books and papers has never been heretofore ordered in any of the following cases: 1st. When it would expose the party to a criminal prosecution. 2d. When discovery would or might involve the party making it in a penalty or forfeiture. 3d. When it would render the party making it infamous. (*McKellar* v. *Briggs*, 2 Abb. Pr., 61; *Bailey* v. *Dean*, 5 Barb., 297; *Leggett* v. *Porthy*, 2 Paige, 599; *McIntyre* v. *Moncius*, 16 Johns., 593; *Marsh* v. *Davison*, 9 Paige, 480; 1 Mad. Ch., 214; 2 id., 320; 4 Johns. Ch., 415; 1 id., 367; 2 Barb. Ch., 301; 4 Paige, 639; 10 id., 583.) The same principle has been repeatedly decided by the courts of the United States. (*Atwell* v. *Fennet*, 2 Blatch., 39; *Stewart* v. *Dracha*, 4 McLean, 563; *U. S.* v. *Twenty-eight Packages*, Gilpin, 306; *Frinck* v.

*Rikeman*, 2 Blatch., 301; *Ocean Ins. Co.* v. *Fields*, 2 Story C. Ct., 59; *People* v. *Mather*, 4 Wend., 229; *People* v. *Hackley*, 24 N. Y., 82; *Henry* v. *Bank of Salina*, 5 Hill, 623.)

JAMES, J.:

The return to the writ of *certiorari* shows that one Denison was brought before a justice of this court on *habeas corpus* issued to the sheriff of Albany county. In his return to the writ of *habeas corpus*, said sheriff sets forth that said Denison was in his custody by virtue of a warrant of commitment for contempt, issued by the Canal Investigating Commission; that said warrant recited the creation of such commission, the appointment of its members, the matters pending before it, that said Denison had been subpœnaed to attend before it to testify, and to bring with him certain books and papers relating to certain specified contracts with the State; that on the 14th day of July, 1875, said commission being duly organized as a board, and holding a regular meeting for purposes of investigation, etc., said Denison appeared before it in answer to said subpœna, and did then and there admit that he had present with him the books and papers relating to the contracts with the State then under investigation, and did then and there in the presence of said commission, willfully refuse to produce said books and papers, and to obey the subpœna, issued to and served upon him; whereupon said Denison was adjudged guilty of contempt, and ordered to be punished.

After a hearing on the return to the *habeas corpus*, the said Denison was discharged from the custody of said sheriff, the learned justice holding, that although the commission had power to enforce the attendance of witnesses, it had no power to compel a witness to answer, or to produce books and papers, or to punish him for refusal.

This investigating commission was created in March, 1875, by a concurrent resolution of the senate and assembly of this State; the members thereof were duly appointed by the governor with the advice and consent of the senate. Its duty, as defined by the resolution, was to investigate the affairs of the canals of this State, etc., and power was given it to compel the attendance of witnesses, and require the production before it of any books or papers in the custody or possession of any witness touching the subject of such investigation, etc.

This resolution and the appointments under it were subsequently recognized and ratified by the legislature (chap. 91, Laws of 1875, page 80), which also gave to the commission authority to issue subpœnas, compel the attendance of witnesses and the production of books and papers before it, and, on failure of any witness to obey its mandate, power to issue attachments with the like proceedings as courts of record.

In this case Denison had been properly subpœnaed to appear before said commission, and to produce before it certain books and papers. He did so appear; he brought with him said books and papers, but he refused to produce them, without giving any reason or making any excuse.

Upon the argument it was claimed that the refusal was justified, because the commission had no legal existence; no legal power to act. That it could not be legally created by concurrent resolution, and that all its doings were void. That such a tribunal could only be created by bill, enacted by both branches of the legislature, and signed by the governor. Certain clauses of the Constitution were cited in support of said objections. It is not necessary to discuss those clauses in detail. It is sufficient to say that there is no clause in the Constitution expressly prohibiting the creation of a commission by concurrent resolution (*People* v. *New York Central Railroad Company*, 24 N. Y., 485); and where not expressly prohibited by the Constitution, the legislative power is unrestricted and unlimited. (*People* v. *Dayton*, 55 N. Y., 367; *Leggett* v. *Hunter*, 19 id., 445.)

Appointing commissions for various purposes by concurrent resolution, has been practiced by both State and national legislatures more or less from the organization of this government. It has been repeatedly done in this State since the adoption of the constitution of 1846, as the Session Laws of the State will show. This fact alone would seem entitled to a controlling weight on the question of constitutionality. (*People* v. *Dayton*, *supra;* Story on the Const., § 408; Cooley on Const., 67.)

But conceding the concurrent resolution unauthorized, the legislature has, by bill and enactment, recognized the commission as a legal entity, validated its creation, and vested it with all the powers exercised in this proceeding. (Laws of 1875, chap. 91, p. 80.)

But it is claimed this act is also unconstitutional. First. As in conflict with that clause of the Constitution which declares that "no person shall be deprived of life, liberty or property without due process of law." This provision has no more application to this act than it has to any other act requiring witnesses to answer, and authorizing their punishment if they refuse. In such cases the proceedings to adjudicate, and to impose sentence, if adjudged guilty, is due process of law. Second. As in violation of article 3, section 17, a new clause which came into the Constitution in January, 1875, which declares that: "No act shall be passed which shall provide that any existing law, or part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law shall be applicable to it, except by inserting it." The act in question is not obnoxious to said clause of the constitution in the sense in which it is used in that instrument; the said act neither comes within the letter or spirit of the inhibition. And besides, this clause should receive a strict construction, and if said act is not strictly within the mischief sought to be provided against by the Constitution, it should be held as not within the inhibition.

I am, therefore, of the opinion that the commission was lawfully created; that it was vested with authority to issue subpœnas, to enforce the attendance of witnesses, and to compel the production of books and papers; and in case of disobedience or refusal, it was authorized to proceed as if it were a court of record. It is true the language of the act does not say, in express words, the commission may punish, but that power is fairly to be implied from its whole scope and purpose.

In this case the witness was guilty of a willful disobedience; his refusal was without explanation or excuse, and the commission very properly adjudged him guilty of contempt, and awarded a warrant of commitment against him. He should have been remanded.

The order of the justice should be reversed, and an order entered directing that the relator be remanded to the custody of the sheriff of Albany county, with costs against the relator.

Present — JAMES and BOARDMAN, JJ.

Ordered accordingly.